UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>DANIEL YEBOAH,<br><br>                    Defendant. | 95 Cr. 1124 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Before the Court is Daniel Yeboah's petition for a writ of error *coram nobis* or a writ of *audita querela* — either of which would have the effect of vacating Mr. Yeboah's 1996 federal narcotics conviction — on the grounds that Mr. Yeboah's plea proceeding improperly took place in the judge's robing room rather than in open court. For the reasons set forth in this Opinion, the Court finds that Mr. Yeboah did not waive his right to collaterally attack his conviction on this basis, but it denies his petition because (i) he has not demonstrated sound reasons for his failure to seek appropriate relief earlier, and (ii) he has failed to demonstrate that he continues to suffer legal consequences from his conviction.

<h2 style="text-align:center">BACKGROUND[1]</h2>

**A.     Mr. Yeboah's Prosecution and Conviction**

Daniel Yeboah was initially arrested on a criminal complaint on May 18, 1995 (Dkt. #1), and later consented to the filing of an information charging him

---

[1]     For ease of reference, the Court refers to Mr. Yeboah's petition for a writ of error *coram nobis* or a writ of *audita querela* as "Pet." (Dkt. #21); to Mr. Yeboah's letter in support of his petition as "Pet. Br." (Dkt. #26); to the Government's opposition as "Gov't Opp." (Dkt. #30); and to Mr. Yeboah's supplemental letter in support of his petition as "Pet. Supp. Br." (Dkt. #33).

with distributing and possessing with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Dkt. #11-12).  On March 20, 1996, Mr. Yeboah entered a plea of guilty before then-United States District Judge Shirley Wohl Kram.  (Minute Entry for March 20, 1996).  While the undersigned did not preside over the plea proceeding, it understands from the record in this case that the plea was made pursuant to a written plea agreement with the Government, and, further, that plea agreements during this time frame typically contained a waiver of a defendant's appellate rights.  (*See* Presentence Investigation Report ("PSR") ¶¶ 3-8).

On June 26, 1996, Judge Kram sentenced Mr. Yeboah principally to a term of one month's imprisonment, followed by a term of three years' supervised release, a special condition of which was a six-month term of home confinement.  (Dkt. #14 (judgment)).  Mr. Yeboah did not appeal from his conviction or sentence.

**B.    Mr. Yeboah's Previous Requests to Have His Conviction Expunged**

In a letter dated May 14, 2021, Mr. Yeboah requested that the Court expunge his 1996 criminal conviction on the grounds that he had been "entrap[ped]."  (Dkt. #16 at 1).  The Court denied this application on June 4, 2021, because it found that Mr. Yeboah could not pursue this relief by means of an application for expungement over which the Court lacked jurisdiction.  (Dkt. #18).  In a letter received on September 17, 2021, Mr. Yeboah submitted what the Court construed as a motion for reconsideration (Dkt. #19), which motion it denied on September 20, 2021 (Dkt. #20).

**C.      Mr. Yeboah's 2023 Collateral Attack on His Conviction**

On May 17, 2023, the Court received another letter from Mr. Yeboah

requesting that the Court expunge his conviction.  (Dkt. #21 (the "Petition")).

In it, he made many of the same arguments about entrapment and noted — for

the first time in any detail — that his March 1996 plea proceeding had been

conducted in Judge Kram's robing room.  (*Id.* at 2).  On May 24, 2023, the

Court directed the Government to respond to this application with its

understanding of the proper procedural vehicle, if any, for Mr. Yeboah to bring

his concerns, as well as any timeliness issues.  (Dkt. #22).  The Government

did so on June 25, 2023.  (Dkt. #24).  It argued that the Court had no

jurisdiction to expunge Mr. Yeboah's conviction; that his claims for post-

conviction relief were untimely; and that he had waived all non-jurisdictional

defenses.  (*See id.*).

On September 27, 2023, upon reading Mr. Yeboah's May 17, 2023 letter

in more depth, the Court construed it as a petition for a writ of error *coram*

*nobis* or a writ of *audita querela* to vacate his guilty plea on a basis consistent

with *United States* v. *Alcantara*, 396 F.3d 189 (2d Cir. 2005), in which the

Second Circuit held that Judge Kram's decision to hold another defendant's

plea proceedings in her robing room violated Federal Rule of Criminal

Procedure 11.  (Dkt. #25 at 2-3 (citing *Alcantara*, 396 F.3d at 205-06)).

Accordingly, the Court set a briefing schedule for the parties to address the

merits of the Petition.  (Dkt. #25 at 5).

In an email dated December 26, 2023, Mr. Yeboah filed what the Court construes as his initial brief. (Dkt. #26 (the "Petitioner's Brief")). The Government filed its brief in opposition to the Petition on February 13, 2024. (Dkt. #30 (the "Government's Opposition")). In it, the Government argues that Mr. Yeboah waived his right to collaterally attack his conviction, and that the Petition fails to satisfy the requirements for either a writ of error *coram nobis* or a writ of *audita querela*. (*See generally id.*). After deciding that it required additional clarifying information from Mr. Yeboah, the Court on November 13, 2024, ordered him to provide such information in a supplemental brief. (Dkt. #32). He did so in a letter the Court received on December 6, 2024. (Dkt. #33 (the "Petitioner's Supplemental Brief")).

## DISCUSSION

### A. Applicable Law

#### 1. Waivers of Collateral Attacks

The Court understands that Mr. Yeboah's plea was made pursuant to a plea agreement with a waiver provision. "The enforceability of an appellate waiver made 'knowingly, voluntarily, and competently' is a longstanding principle of Second Circuit law." *United States* v. *Bilal*, 941 F. Supp. 2d 397, 401 (S.D.N.Y. 2013) (quoting *United States* v. *Riggi*, 649 F.3d 143, 147 (2d Cir. 2011) (internal quotation marks omitted)). Even apart from a specific waiver provision, "[a] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring

prior to the entry of the guilty plea." *Parisi* v. *United States*, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation marks omitted).

A petition for a writ of error *coram nobis* or for a writ of *audita querela* amounts to a collateral attack on a verdict, and courts in this Circuit have on several occasions found that waivers of the right to appeal or collaterally a conviction attack apply with equal force to this sort of relief. *See Bilal*, 941 F. Supp. 2d at 401 ("Bilal's plea agreement waived his right to appeal or to otherwise challenge his sentence."); *see also United States* v. *Beckish*, No. 17 Cr. 569 (ER), 2020 WL 4500178, at *3 (S.D.N.Y. Aug. 5, 2020); *United States* v. *Sanchez*, No. 03 Cr. 965 (SHS), 2010 WL 5222131, at *2 (S.D.N.Y. Dec. 22, 2010); *United States* v. *Bastien*, 111 F. Supp. 3d 315, 318-19 (E.D.N.Y. 2015); *Shen* v. *United States*, No. 12 Cr. 68 (DLI), No. 15 Civ. 5840 (DLI), 2022 WL 229371, at *2 (E.D.N.Y. Jan. 26, 2022); *Dressler* v. *United States*, No. 21 Civ. 1055 (JCH), 2022 WL 3107313, at *3 (D. Conn. Aug. 4, 2022). At the same time, however, the Second Circuit has made clear that waiver "does not foreclose [a defendant] from pursuing [a] constitutional claim." *United States* v. *Johnson,* 347 F.3d 412, 414 (2d Cir. 2003); *see also United States* v. *De Los Angeles*, 392 F. App'x 890, 892 (2d Cir. 2010) (summary order) (characterizing the holding in *Johnson* as being that "certain constitutional violations may invalidate an otherwise enforceable appellate waiver").

### 2.    Writs of Error *Coram Nobis* or *Audita Querela*

"The Court is obliged to construe *pro se* pleadings liberally and interpret them 'to raise the strongest arguments they *suggest.*'" *Dixon* v. *United States*,

No. 24 Civ. 4312 (LAP), 2024 WL 3413735, at *1 (S.D.N.Y. July 15, 2024)
(quoting *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted)).  The Court construes Mr.
Yeboah's May 17, 2023 letter as a petition for a writ of error *coram nobis* or a
writ of *audita querela* under the All Writs Act, 28 U.S.C. § 1651(a).

 "The writ of error *coram nobis* is an 'extraordinary remedy' that 'issues
only in extreme cases[.]'"  *United States* v. *Rutigliano*, 887 F.3d 98, 108 (2d Cir.
2018) (quoting *United States* v. *Denedo*, 556 U.S. 904, 916 (2009)).  It "is
'essentially a remedy of last resort for petitioners who are no longer in custody
pursuant to a criminal conviction.'"  *United States* v. *Mandanici*, 205 F.3d 519,
524 (2d Cir. 2000) (quoting *Fleming* v. *United States*, 146 F.3d 88, 89-90 (2d
Cir. 1998) (per curiam)).  "[R]elief under the writ is strictly limited to those
cases in which errors of the most fundamental character have rendered the
proceeding itself irregular and invalid."  *Foont* v. *United States ("Foont II")*, 93
F.3d 76, 78 (2d Cir. 1996) (internal quotation marks and alterations omitted).
"Generally, therefore, *coram nobis* relief 'after final judgment and exhaustion or
waiver of any statutory right of review should be allowed ... only under
circumstances compelling such action to achieve justice[.]'"  *Dixon*, 2024 WL
3413735, at *2 (omission in original) (quoting *United States* v. *Morgan,* 346 U.S.
502, 511 (1954)).

 Petitioners seeking *coram nobis* relief must demonstrate that "'[i] there
are circumstances compelling such action to achieve justice; [ii] sound reasons
exist for failure to seek appropriate earlier relief; and [iii] the petitioner

continues to suffer legal consequences from his [or her] conviction that may be remedied by granting of the writ.'" *Dixon*, 2024 WL 3413735, at *2 (alteration in original) (quoting *Foont II,* 93 F.3d at 79 (further citations omitted)).  "[A] court must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner." *Mandanici*, 205 F.3d at 524.

Separately, "[a] writ of *audita querela* is available when 'the absence of any avenue of collateral attack would raise serious constitutional questions about the laws limiting those avenues.'" *United States* v. *Panton*, No. 89 Cr. 346 (LAP), 2021 WL 5827045, at *2 (S.D.N.Y. Dec. 8, 2021) (quoting *United States* v. *Richter*, 510 F.3d 103, 104 (2d Cir. 2007) (per curiam)).  The writ is "unavailable if the petitioner could have sought earlier relief through another mechanism such as a direct appeal." *United States* v. *Daugerdas*, 521 F. Supp. 3d 320, 325 (S.D.N.Y. 2021) (internal quotation marks omitted), *aff'd*, No. 21-605, 2022 WL 274226 (2d Cir. Jan. 31, 2022) (summary order).  It is "available, if at all, 'where there is a legal, as contrasted with an equitable, objection to a conviction that has arisen subsequent to the conviction and that is not redressable pursuant to another post-conviction remedy.'" *United States* v. *Persico*, No. 84 Cr. 809 (JFK), 2000 WL 145750, at *5 (S.D.N.Y. Feb. 7, 2000) (quoting *United States* v. *LaPlante*, 57 F.3d 252, 253 (2d Cir. 1995)), *aff'd*, 242 F.3d 369 (2d Cir. 2000) (summary order).

**B.    Analysis**

### 1.    Mr. Yeboah Has Not Waived His Right to Collaterally Attack His Conviction

The instant case implicates two different waiver concepts, *viz.*, the general rule that a knowing and voluntary guilty plea waives all non-jurisdictional defenses and the more specific waiver in Mr. Yeboah's plea agreement.  Both concepts, however, distill to the same result:  The Court finds that Mr. Yeboah has not waived his right to collaterally attack his conviction through his petition for a writ of error *coram nobis* or a writ of *audita querela*, because he alleges that the plea proceeding, during which he ostensibly waived this right, took place in Judge Kram's robing room rather than in open court, which is an error of constitutional dimension.

As the Court stated in its June 4, 2021 Order, Mr. Yeboah's "unconditional guilty plea to a controlled substance offense operates as a waiver of all non-jurisdictional defenses, including the defense of entrapment." (Dkt. #18 at 1 (citing *Parisi*, 529 F.3d at 138)).  But a petition for a writ of error *coram nobis* (or a writ of *audita querela*) is not an assertion of an affirmative defense.  Rather, it is a collateral attack on a conviction.  Nevertheless, the right to bring such a collateral attack can also be waived.  *See, e.g.*, *Beckish*, 2020 WL 4500178, at *2-3; *Sanchez*, 2010 WL 5222131, at *2; *Bastien*, 111 F. Supp. 3d at 318-19.

According to the Government, it follows that Mr. Yeboah's guilty plea "renders him ineligible for coram nobis relief."  (Gov't Opp. 2 (citing *Beckish*, 2020 WL 4500178, at *2; *Sanchez*, 2010 WL 5222131, at *2; *Bastien*, 111 F.

Supp. 3d at 318)).  But the Government overlooks the fact that the courts in the cases it cites, as well as courts in other cases, have enforced *valid* waivers of the right to collaterally attack, embedded in *valid* plea agreements.  *See Beckish*, 2020 WL 4500178, at *3 (concluding that Beckish's plea and waiver were "knowing, voluntary and competently executed" based on "the clear record from the plea hearing"); *Sanchez*, 2010 WL 5222131, at *2 ("After questioning, this Court found that Sanchez's waiver was knowing and voluntary."); *Bastien*, 111 F. Supp. 3d at 319 ("The Court has reviewed the plea proceeding and concludes that its finding as to the voluntariness of the plea and waiver was correct."); *Shen*, 2022 WL 229371, at *2-3 (finding that petitioner was "barred from collaterally challenging" restitution and forfeiture orders because "the Second Circuit dismissed Petitioner's appeal of his sentence, finding that Petitioner had not demonstrated that the waiver of his appellate rights was unenforceable"); *Dressler*, 2022 WL 3107313, at *3 ("Thus, Dressler's appeal waiver is effective, and he is barred from collaterally attacking his conviction or sentence through any proceeding, including the instant petition for a writ of *coram nobis*." (internal quotation marks and alterations omitted)); *Bilal*, 941 F. Supp. 2d at 401 ("Because [Bilal] entered the agreement knowingly, voluntarily, and competently, [the court] conclude[s] that the waiver is enforceable.").

That is a far cry from the situation at hand.  In the Petition, Mr. Yeboah claims that his guilty plea took place in Judge Kram's robing room rather than in open court.  (*See* Pet. Br. 2).  In *United States* v. *Alcantara*, the Second Circuit held that conducting a plea proceeding in a judge's (specifically, Judge

Kram's) robing room violated the First Amendment and Federal Rule of Criminal Procedure 11.  396 F.3d 189, 201, 206 (2d Cir. 2005).  As for the First Amendment, the Second Circuit had previously set forth notice procedures that courts were obligated to follow before closing a proceeding to which the public has a right to attend.  Such procedures, among other things, required courts to promptly docket motions for courtroom closure and the fact of courtroom closure.  *In re The Herald Co.*, 734 F.2d 93, 102-03 (2d Cir. 1984).  Accordingly, the *Alcantara* Court found that, absent fulfillment of the *Herald* notice requirement, conducting a plea proceeding in the robing room "infringed on the First Amendment right of access of the public and press."  396 F.3d at 202-03.

As for Rule 11, the *Alcantara* Court concluded that a robing room plea proceeding violates the rule's requirement that such proceedings take place "in open court."  396 F.3d at 206 (citing Fed. R. Crim. P. 11); *see* Fed. R. Crim. P. 11(b)(1) ("Before the court accepts a plea of guilty or *nolo contendere*, the defendant may be placed under oath, and the court must address the defendant personally *in open court*." (emphasis added)).  Because the Second Circuit decided to remand the matter back to the district court under its supervisory powers, it "[did] not decide whether this Rule 11 error would provide a basis for vacating [the defendant]'s plea."  *Id.* at 206.  Likewise, it did not address the question whether such a proceeding violates the accused's Sixth Amendment right to a public trial.  *See id.* at 203-04; U.S. Const. amend VI ("[T]he accused shall enjoy the right to a … public trial[.]").

For its part, the Supreme Court has held that the public-trial right applies to pretrial proceedings. In *Waller* v. *Georgia*, the Court held that a pretrial suppression hearing must be open to the public, on both First Amendment *and* Sixth Amendment grounds. 467 U.S. 39, 46-47 (1984). Specifically, the Court held that a courtroom closure violates the Sixth Amendment right to a public trial unless (i) closing the hearing would advance an overriding interest likely to be prejudiced; (ii) the closure is no broader than necessary to protect that interest; (iii) the trial court considered reasonable alternatives to closure; and (iv) the trial court made adequate findings to support it. *Id.* at 48; *accord Ayala* v. *Speckard,* 131 F.3d 62, 69 (2d Cir. 1997) (*en banc*); *see also United States* v. *Smith*, 426 F.3d 567, 571 (2d Cir. 2005). More recently, the Supreme Court has "made it clear that the public-trial right extends to jury selection as well as to other portions of the trial." *Weaver* v. *Massachusetts*, 582 U.S. 286, 292 (2017) (citing *Presley* v. *Georgia*, 558 U.S. 209, 213-15 (2010) (per curiam)). This Court has no reason to believe that an accused's public-trial right would not extend to a plea proceeding, even though the Second Circuit did not specifically decide *Alcantara* on those grounds. *See Presley*, 558 U.S. at 213 ("The extent to which the First and Sixth Amendment public trial rights are coextensive is an open question.... Still, there is no legitimate reason, at least in the context of juror selection proceedings, to give one who asserts a First Amendment privilege greater rights to insist on public proceedings than the accused has.").

11

The error in *Alcantara* was a fundamental one, of constitutional dimension, which often results in vacatur of the underlying conviction in appellate or collateral challenge proceedings.  The Second Circuit determined that the district court's failure to give notice of or to substantiate its decision to hold plea and sentencing procedures in the robing room supported a decision to, "in the exercise of [the Second Circuit's] supervisory powers, remand both cases for proceedings to be held in open court." *Alcantara*, 396 F.3d at 201.  By means of those powers, the Second Circuit vacated the plea and sentencing proceedings that took place in Judge Kram's robing room.  *Id.* at 203.  In strong terms, it described the district court's error as "not harmless" but "fundamental [in] nature," because it "harm[ed] the integrity of our federal judicial system as a whole."  *Id.*  Likewise, after concluding that the accused's public-trial right was violated in *Presley*, the Supreme Court reversed and remanded the case.  558 U.S. at 216.  And in *Weaver*, the Supreme Court held that "violation of the right to a public trial is a structural error," 582 U.S. at 296,[2] which can make a trial "fundamentally unfair," *id.* at 298,[3] such that the

---

[2]    The Second Circuit has "recognized a narrow 'triviality' exception that ... safeguards convictions from vacatur under certain circumstances." *United States* v. *Mendonca*, 88 F.4th 144, 152 (2d Cir. 2023) (quoting *Peterson* v. *Williams*, 85 F.3d 39, 42 (2d Cir. 1996)).  However, this doctrine applies narrowly, such as "where a trial court closed the courtroom to the public during a few hours of a multi-day *voir dire* proceeding." *United States* v. *Gupta*, 699 F.3d 682, 689 (2d Cir. 2012); *cf. Smith* v. *Hollins*, 448 F.3d 533, 535-37, 540-41 (2d Cir. 2006) (declining to apply the triviality standard where trial court excluded defendant's siblings from courtroom during testimony of crucial witness).

[3]    A public-trial violation does not "always lead[] to a fundamentally unfair trial." *Weaver* v. *Massachusetts*, 582 U.S. 286, 298 (2017).  The Supreme Court has said that, for example, it would be "unconvincing" to "deem a trial fundamentally unfair just because a judge omitted to announce factual findings before making an otherwise valid decision to order the courtroom temporarily closed." *Id.*  The Court justified prior cases where it found that a public-trial violation to be a structural error due to the 'difficulty

12

defendant generally is entitled to automatic reversal of his conviction, *see id.* at 299, 301-02 (citing *Neder* v. *United States*, 527 U.S. 1, 7 (1999)).[4]

Those errors are commensurate with the error in Mr. Yeboah's plea proceeding. And the remedies in those cases (*i.e.*, reversal and vacatur) lead this Court to conclude that it will not enforce Mr. Yeboah's waiver of his right to collaterally attack his conviction. Ordinarily, valid appellate waivers are enforceable. *See Bilal*, 941 F. Supp. 2d at 401. However, "a defendant may still challenge the constitutionality of the process by which he waived [his] rights." *Id.* at 402. Indeed, the Second Circuit has held that "certain constitutional violations may invalidate an otherwise enforceable appellate waiver[.]" *De Los Angeles*, 392 F. App'x at 892 (citing *Johnson*, 347 F.3d at 415); *see also Bilal*, 941 F. Supp. 2d at 402 ("[C]ourts will not enforce an appellate waiver when a 'defendant claims that the plea agreement was entered into without effective assistance of counsel.'" (quoting *United States* v. *Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam))); *United States* v. *Rosa*, 123 F.3d 94, 98 (2d Cir. 1997) (discussing circumstances in which a constitutionally deficient waiver of appeal can be unenforceable).

---

assessing the effect of the error.'" *Id.* (quoting *United States* v. *Gonzalez-Lopez*, 548 U.S. 140, 149 n.4 (2006)).

[4]    The Supreme Court found that the public-trial right violation at issue in *Weaver* — an ineffective assistance of counsel claim based on failure to object to closure of the courtroom during jury *voir dire* — did not render the trial at issue fundamentally unfair because the petitioner had not shown that his counsel's failure to object prejudiced him, and therefore he did not show that it led to a fundamentally unfair trial. *Weaver*, 582 U.S. at 304-05. In other words, that the public-trial right violation was couched in an ineffective assistance of counsel claim meant that it was not, on its face, a structural error.

13

As in *Alcantara*, there is no need for this Court to decide whether holding a plea proceeding in a judge's robing room absent a justification violates the Sixth Amendment *per se*, though recent Supreme Court precedent suggests that it does.  *See Weaver*, 582 U.S. at 292 (citing *Presley*, 558 U.S. at 213-15). It certainly violates the requirements of Federal Rule of Criminal Procedure 11. *See Alcantara*, 396 F.3d at 205-06.  Here, as in *Alcantara*, the precise nature of the error is less important than its general infirmity, which is fundamental and offensive to the integrity of the federal judicial system.  *See id.* at 201.  Mr. Yeboah claims that his guilty plea took place in Judge Kram's robing room (Pet. Br. 2), mirroring the facts of *Alcantara*, 396 F.3d at 191.  The Government does not appear to contest the fact of the robing room proceeding.  (*See* Gov't Opp. 3).  Simply put, the Court finds that the process by which Mr. Yeboah waived his appellate rights was offensive to the Constitution and to the federal judicial system itself.  Therefore, the Court will not enforce Mr. Yeboah's waiver of his right to collaterally attack his appeal.

### 2.    The Court Denies Mr. Yeboah a Writ of Error *Coram Nobis*

Having found that Mr. Yeboah did not waive his right to collaterally attack his conviction, the Court turns to the merits of his collateral attack, specifically, the merits of Mr. Yeboah's *coram nobis* petition.  To review, petitioners seeking *coram nobis* relief must demonstrate that "'[i] there are circumstances compelling such action to achieve justice; [ii] sound reasons exist for failure to seek appropriate earlier relief; and [iii] the petitioner continues to suffer legal consequences from his [or her] conviction that may be

14

remedied by granting of the writ.'" *Dixon*, 2024 WL 3413735, at \*2 (alteration in original) (quoting *Foont II*, 93 F.3d at 79). Ultimately, the Court denies Mr. Yeboah's *coram nobis* petition because it satisfies only the first of the three requirements.

> **a.    Mr. Yeboah Has Demonstrated Circumstances Compelling *Coram Nobis* Relief to Achieve Justice**

The Government does not appear to contest that Mr. Yeboah's plea proceeding took place in Judge Kram's robing room, but rather asserts that his Petition fails to satisfy the remaining two procedural requirements for *coram nobis* relief, and therefore concludes that "the Court need not reach the merits of [Mr.] Yeboah's allegations." (Gov't Opp. 3). But the Court has little difficulty concluding that Mr. Yeboah has established the first requirement, which courts in this Circuit analyze through the lens of the substantive legal violation that the petitioner suffered. *See United States* v. *Foont ("Foont I")*, 901 F. Supp. 729, 733 (S.D.N.Y. 1995) (describing this requirement as "substantive" and the other two requirements as "procedural"); *see also, e.g.*, *Kovacs* v. *United States*, 744 F.3d 44, 49-53 (2d Cir. 2014) (finding circumstances compelling *coram nobis* relief to achieve justice where petitioner made out a sufficient claim of ineffective assistance of counsel); *United States* v. *Hernandez*, 283 F. Supp. 3d 144, 149-53 (S.D.N.Y. 2018) (same); *cf., e.g.*, *United States* v. *Clanton*, No. 97 Cr. 776 (ERK) (SJB), 2024 WL 4449410, at \*6-9 (E.D.N.Y. Oct. 2, 2024) (finding that petitioner failed to demonstrate circumstances compelling *coram nobis* relief where, despite petitioner's argument to the contrary, he "both committed and pleaded guilty to a completed Hobbs Act robbery"). The Second Circuit in

*Alcantara* made clear that holding a plea proceeding in a judge's robing room is an error that is "not harmless" but "fundamental [in] nature," because it "harms the integrity of our federal judicial system as a whole."  396 F.3d at 203.  This substantive legal violation is sufficiently fundamental to satisfy the first requirement.  *See Nicks* v. *United States*, 955 F.2d 161, 167 (2d Cir. 1992) ("The failure to hold a competency hearing when constitutionally required is an error of such magnitude.…  Such an error may entitle a person to *coram nobis* relief[.]"); *cf. George* v. *United States*, No. 23 Civ. 9444 (PKC), 2024 WL 3876304, at *4-5 (S.D.N.Y. Aug. 20, 2024) (finding, without analyzing the procedural factors, that "[n]o error of the most fundamental character occurred," and therefore no writ could issue).  Therefore, the Court finds that Mr. Yeboah has demonstrated circumstances compelling *coram nobis* relief to achieve justice, and so it turns to the two procedural requirements.

### b.    Mr. Yeboah Has Not Demonstrated Sound Reasons for His Failure to Seek Appropriate Relief Earlier

As it happens, the Petition clears neither of the two procedural hurdles. As for his failure to seek appropriate relief earlier, Mr. Yeboah claims that he "noticed inconsistencies in [his] case" only "after getting official transcripts of [his] case from the federal archives in Lee['s] Summit in Missouri."  (Pet. 2; *see also* Pet. Br. 1; Pet. Supp. Br. 3).  He also claims that he "didn't know the limitation to appeal [his] case because [he] was not informed of [his] trial."  (Pet. Supp. Br. 3).  The Government counters that Mr. Yeboah could have raised his claim regarding his guilty plea in Judge Kram's robing room closer in time to the Second Circuit's 2005 decision in *Alcantara*, but "[h]e did not, and only

16

now asks the Court to grant him relief based on a claim that was equally available to him almost [twenty] years ago." (Gov't Opp. 3). Therefore, says the Government, his "claim can be denied on timeliness grounds alone." (*Id.*). The Court finds that, although Mr. Yeboah is not *per se* foreclosed from seeking *coram nobis* relief merely because of the significant amount of time that has elapsed both since his conviction and since *Alcantara*, he has nonetheless failed to demonstrate sound reasons for his failure to seek appropriate relief earlier.

"It is undisputed that '[b]ecause a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations.'" *Foont II*, 93 F.3d at 79 (alteration in original) (quoting *Telink, Inc.* v. *United States*, 24 F.3d 42, 45 (9th Cir. 1994)); *accord Kovacs*, 744 F.3d at 54. However, "an error of constitutional dimension at the time of plea or sentence renders a conviction voidable, not void, and *coram nobis* relief may be barred by the passage of time," with due consideration given to "the circumstances of the individual case." *Foont II*, 93 F.3d at 79. A years-long period between release from custody and the filing of a *coram nobis* petition does not necessarily spell doom for it. *See Nicks*, 955 F.2d at 167-68 (remanding to the district court the question whether a fifteen-year period prior to filing a *coram nobis* petition rendered it untimely); *Nicks* v. *United States*, 835 F. Supp. 151, 156 (S.D.N.Y. 1993) ("Nicks'[s] mental condition while incarcerated, the limitations under which his trial counsel labored, and the proper procedural path trod by his appellate counsel combine

17

to establish sound reasons why Nicks did not apply earlier to this Court for *coram nobis* relief.").  Typically, however, courts find that a *coram nobis* petition should be dismissed if there have been several years of unjustified delay.  *See, e.g.*, *Pickett* v. *United States*, No. 18 Civ. 2560 (LDH), 2018 WL 9990828, at *2 (E.D.N.Y. Nov. 1, 2018) (citing *Cruz* v. *People of N.Y.*, No. 03 Civ. 9815 (DC), 2004 WL 1516787, at *4 (S.D.N.Y July 6, 2004) ("[C]ourts have held that a coram nobis [petition] should be dismissed if its filing has been delayed for more than several years." (internal quotation marks omitted))); *Moskowitz* v. *United States*, 64 F. Supp. 3d 574, 580 (S.D.N.Y. 2014) ("Five years may appear trivial against the backdrop of the six elapsed decades since her conviction, but it is nevertheless a long delay in its own right.").  The petitioner bears the burden of demonstrating sound reasons for failing to seek appropriate earlier relief.  *See Rutigliano*, 887 F.3d at 108.

The Court sees Mr. Yeboah's petition as raising two distinct but related timeliness issues.  The first issue is whether Mr. Yeboah has demonstrated sound reasons for his failure to seek appropriate relief closer in time to his conviction, and before *Alcantara* was decided.  The Court finds that he has not.  Mr. Yeboah was incarcerated for less than one month in 1996.  (*See* Pet. 2).  At the time, neither direct appeal nor *habeas* relief was available to Mr. Yeboah on the grounds of *Alcantara*, which was decided nearly a decade after his brief incarceration.  Yet Mr. Yeboah still "knew or should have known since the time of his conviction … of the facts underlying his current claim," which is "[t]he critical inquiry" of "whether the petitioner is able to show justifiable reasons for

18

the delay." *Foont II*, 93 F.3d at 80; *see also United States* v. *Stenger*, No. 23-6528, 2024 WL 3220260 (2d Cir. June 28, 2024) (summary order) (affirming finding that *coram nobis* petitioner's delays were unjustified where petitioner chose not to appeal a restitution order, and where his attorneys could have raised the same arguments at an evidentiary hearing); *Chhabra* v. *United States*, 720 F.3d 395, 411 (2d Cir. 2013) (affirming finding that *coram nobis* petition was untimely where petitioner was aware of collateral deportation consequences at the time of his guilty plea). The fact that Mr. Yeboah decided to file this Petition only after retrieving the records of his case from the federal archives does not change the fact that he could have raised, but did not raise, the robing room issue on the grounds of the Sixth Amendment or Federal Rule of Criminal Procedure 11 following his conviction. He knew the same underlying facts then as he does now. *See Foont II*, 93 F.3d at 80. He has not demonstrated sound reasons for his failure to raise the issue on direct appeal, through *habeas* relief, in a *coram nobis* petition, or in another procedural vehicle following his release from custody.

The second timeliness issue is whether Mr. Yeboah has demonstrated sound reasons for his failure to seek appropriate relief closer in time to *Alcantara* (which, again, was decided in 2005). The Court finds that he has not. Seeking *coram nobis* relief soon after a precedential decision in the petitioner's favor can support a finding that the petitioner has demonstrated sound reasons for failing to seek appropriate earlier relief. *See, e.g.*, *United States* v. *Britt*, No. 18 Cr. 36 (JPO), 2024 WL 168333, at *1 (S.D.N.Y. Jan. 16,

2024) ("The Second Circuit's decision in *Blaszczak* and the United States'

confession of error in his codefendants' cases provided the basis for Britt to

seek relief from his conviction, and he petitioned for relief soon after those

events."). However, it has been nearly two decades since *Alcantara* was

decided, and only now does Mr. Yeboah bring a collateral attack on his

conviction on these grounds. Once again, Mr. Yeboah's recent retrieval of his

case records from the federal archives does not change the fact that he knew,

nearer in time to the *Alcantara* decision, that his plea proceeding took place in

Judge Kram's robing room. If Mr. Yeboah had demonstrated sound reasons for

waiting so long after *Alcantara* was decided to bring this Petition, then he might

have cleared this procedural hurdle. But he has not. "[I]n light of the

circumstances of the individual case," *Foont II*, 93 F.3d at 79, and with due

respect to the Government's "interest in the finality of convictions," *id.* at 80,

the Court finds that Mr. Yeboah has failed to demonstrate sound reasons for

his failure to seek appropriate relief earlier.

> **c.    Mr. Yeboah Has Not Demonstrated That He Continues to
> Suffer Legal Consequences from His Conviction**

Mr. Yeboah's aforementioned timeliness issues are themselves each a

sufficient basis to deny the Petition. Nevertheless, the Court addresses the

third (and second procedural) requirement for *coram nobis* relief: whether Mr.

Yeboah has demonstrated that he continues to suffer legal consequences from

his conviction. The Court finds that he has not.

"The requirement that the petitioner demonstrate continuing legal

consequences from his conviction derives from the Supreme Court's

observation in [*United States* v.] *Morgan* that '[a]lthough the term has been

served, the results of the conviction may persist.  Subsequent convictions may

carry heavier penalties, [and] civil rights may be affected.'" *Fleming*, 146 F.3d

at 90 (second alteration in original) (quoting *Morgan*, 346 U.S. at 512-13).  The

Second Circuit has found that deprivation of a petitioner's right to vote under

state law, and the use of her conviction as an aggravating factor for a

subsequent offense, are examples of such consequences.  *Id.* (citing *Kyle* v.

*United States*, 288 F.2d 440, 441 (2d Cir. 1961) (per curiam); *Nicks*, 955 F.2d

at 167).  By contrast, the Second Circuit has held that "the mere 'desire to be

rid of the stigma' of a conviction is not enough."  *Id.* (quoting *United States* v.

*Nat'l Plastikwear Fashions*, 368 F.2d 845, 846 (2d Cir. 1966) (per curiam)); *see

also Moskowitz*, 64 F. Supp. 3d at 580 ("Reputational harm, standing alone,

does not satisfy the continuing legal consequences requirement for obtaining

*coram nobis* relief." (quoting *United States* v. *Liffiton*, 159 F.3d 1349 (2d Cir.

1998) (summary order) (unpublished opinion))).  Similarly, a claim that is

"purely speculative" is insufficient; the "petitioner must at least point to a

*concrete threat* that an erroneous conviction's lingering disabilities will cause

*serious harm*."  *Fleming*, 146 F.3d at 91 (emphasis added) (internal citation and

quotation marks omitted); *see, e.g.*, *id.* at 90-91 (finding that petitioner failed to

state a claim for *coram nobis* relief where he claimed that he was "disabled from

employment in a variety of financial jobs," but the record "contain[ed] no

evidence that petitioner has sought and been denied licensure as a securities

broker, that he has ever been so employed in the past, or that he could obtain

21

such employment but for his conviction"); *Moskowitz*, 64 F. Supp. 3d at 580-81 (finding petitioner's inability to serve on a jury to be a "[p]urely speculative harm," where petitioner "d[id] not claim to have pursued jury service and been denied, nor [did] she evince any intent or desire to serve on a jury").

Here, Mr. Yeboah claims that his conviction has "affected [his] state and federal clearance" (Pet. 2), or "affected [his] federal clearances" (Pet. Br. 2). After the Court asked him to clarify what he meant by this (Dkt. #32), Mr. Yeboah provided more detail (*see* Pet. Supp. Br. 7-8). Specifically, Mr. Yeboah says he "had talked to an agent with the [U.S. S]ecret [S]ervice who is also a good friend of [his] about a job with the [agency] but [his] federal criminal case from New York [led to his being] declined." (*Id.* at 7). Mr. Yeboah also claims that he worked as a sales manager at a battery business that supplied batteries to the Secret Service, and that he "went to Fort Myer[] in Virginia to open and deliver batteries to the military base [but] was denied access to the base because of [his] criminal record." (*Id.* at 8).[5] He does not specify when these events occurred. (*Cf. id.*).

The Court finds that Mr. Yeboah has failed to show that, but for his conviction, he would have obtained a job at the Secret Service. "[T]o demonstrate continuing legal consequences based on an inability to obtain employment, a petitioner must show that 'he could obtain such employment but for his conviction[.]'" *Liffiton*, 159 F.3d at 1349 (quoting *Fleming*, 146 F.3d

---

[5]    The former Fort Myer is now known as Joint Base Myer-Henderson Hall.

at 91).  By contrast, Mr. Yeboah has not claimed that he formally applied to work at the agency; he claims only that he spoke to a friend about it.  (*See* Pet. Supp. Br. 7).  As for his attempt to gain access to Fort Myer to further his battery business, the Court finds this claim too speculative to constitute a continuing legal consequence.  Mr. Yeboah's inability to gain access to one military base does not prevent him from selling batteries to other entities, nor does it appear to jeopardize his livelihood.  *See, e.g.*, *Fleming*, 146 F.3d at 90-91 (finding insufficient petitioner's claim that he could not obtain a securities broker's license though he had never been so employed in the past); *cf., e.g.*, *Britt*, 2024 WL 168333, at *1 (finding sufficient continuing consequences where petitioner was ineligible to reenter the United States, had difficulty "clear[ing] background checks associated with credit card and housing applications," and was ineligible for certain "professional opportunities *in his areas of expertise*." (emphasis added)); *Parietti* v. *United States*, No. 16 Cr. 373 (PAE), 2022 WL 3139623, at *3 (S.D.N.Y. Aug. 5, 2022) (finding petitioner continued to suffer legal consequences where "he became disqualified under SEC and FINRA rules from holding any of his prior registrations and licenses").  Therefore, the Court finds that Mr. Yeboah has failed to demonstrate that he continues to suffer legal consequences from his conviction.

### 3. The Court Denies Mr. Yeboah a Writ of *Audita Querela*

The Court briefly addresses its alternative construction of Mr. Yeboah's collateral attack on his conviction as a petition for a writ of *audita querela*.  As with a writ of error *coram nobis*, a writ of *audita querela* is unavailable "if the

petitioner could have sought earlier relief through another mechanism such as a direct appeal." *Daugerdas*, 521 F. Supp. 3d at 325 (internal quotation marks omitted). A writ of *audita querela* might be available where *coram nobis* is unavailable "if the absence of any avenue of collateral attack would raise serious constitutional questions about the laws limiting those avenues[.]" *Richter*, 510 F.3d at 104. This is no such case. The Court denies Mr. Yeboah's *coram nobis* petition because he has not justified his failure to seek earlier appropriate relief, and because he failed to show that he continues to suffer legal consequences from his conviction. The demanding *coram nobis* standards are aimed at limiting relief in cases like this. In accordance with those standards, the Court denies Mr. Yeboah's petition for *audita querela*.

## CONCLUSION

For the above reasons, the Court DENIES Mr. Yeboah's petition for a writ of error *coram nobis* or a writ of *audita querela*. The Clerk of Court is directed to mail a copy of this Opinion to Mr. Yeboah at his address of record.

SO ORDERED.

Dated:    December 18, 2024
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge